IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

NATHANIEL BENSON,           )
                            )
              Plaintiff,    )
                            )
        v.                  )     No.  04 C 3860
                            )
TRANS UNION, LLC,           )
                            )
              Defendant.    )

MEMORANDUM OPINION AND ORDER

Nathaniel Benson ("Benson") has sued consumer reporting agency Trans Union, LLC ("Trans Union"), asserting violations of the Fair Credit Reporting Act ("Act," 15 U.S.C. §§1681-1681u)[1] as well as advancing a common law defamation claim.[2] Trans Union has moved for summary judgment as to all claims under Fed. R. Civ. P. ("Rule") 56. Because Trans Union has demonstrated the nonexistence of any genuine issue of material fact, its Rule 56 motion is granted and this action is dismissed with prejudice.

Summary Judgment Standard

Every Rule 56 movant bears the burden of establishing the absence of any genuine issue of material fact (Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)). For that purpose courts

---

[1] Further references to the Act take the form "Section--," omitting repetition of "15 U.S.C."

[2] Benson's seven-count Amended Complaint also included claims against Equifax Information Services, LLC, The People's Gas Light and Coke Company ("Peoples Gas") and Credit Bureau Collection Services ("CBC"). Benson's claims against those other parties have been dismissed, so that his only remaining claims are those pending against Trans Union.

consider the evidentiary record in the light most favorable to nonmovants and draw all reasonable inferences in their favor (Lesch v. Crown Cork & Seal Co., 282 F.3d 467, 471 (7th Cir. 2002)). But to avoid summary judgment a nonmovant must produce "more than a scintilla of evidence to support his position" that a genuine issue of material fact exists (Pugh v. City of Attica, 259 F.3d 619, 625 (7th Cir. 2001)) and "must set forth specific facts that demonstrate a genuine issue of triable fact" (id.). Ultimately, summary judgment is warranted only if a reasonable jury could not return a verdict for the nonmovant (Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). What follows is a summary of the facts viewed of course in the light most favorable to nonmovant Benson--but within the limitations created by the extent of his compliance (or noncompliance) with the strictures of LR 56.

## Facts[3]

On September 16, 2003 Trans Union received a communication from Benson via its website disputing an account that had been

---

[3] This District Court's LR 56.1 implements Rule 56 by requiring the parties to submit evidentiary statements and responses to such statements, to highlight which facts are disputed and which are agreed upon. This opinion cites to Trans Union's and Benson's LR 56.1 statements as "T. St. ¶--" and "B. St. ¶--" respectively and to their respective responses as "T. Resp. ¶--," and "B. Resp. ¶--." Where an assertion in either party's LR.56.1 statement is undisputed by the opponent, the opinion includes only a citation to the original statement. "T." and "B." designations are also used in referring to all other documents submitted by the parties.

reflected as delinquent on his Trans-Union-generated credit report (T. St. ¶34). Benson's correspondence explained that the account in question, identified as Peoples' Energy #5500003681294 ("Peoples Account"), was inaccurately reflected on his credit report as past due in the amount of $2,270.60 because, as he wrote (T. Ex. B-1):

> The bill was for my father's business address Nate's Grove Meat. He has the exact same name as mine. I had no involvement with the address of 8357 S. Cottage Grove. This item belongs to Nathaniel Benson, Sr.

In response Trans Union began an investigation into the Peoples Account by transmitting a verification request to Peoples Gas (T. St. ¶38). After Peoples Gas did not respond to that request, Trans Union deleted the Peoples Account from Benson's credit file on October 14, 2003 so that it no longer appeared on his credit report (T. St. ¶39). Discovery in this case, however, has revealed that Benson worked at his father's business and that the Peoples Account was opened using Benson's name, social security number and birth date (T. St. ¶¶19, 20, 21, 24).

In January 2004[4] Benson applied to Citibank, F.S.B. ("Citibank") for a home equity loan (T. St. ¶107). Citibank accessed Benson's credit report on January 22 and sent Benson a letter on January 27 denying his application (T. St. ¶¶106, 108).

---

[4] Because all subsequent events referred to in this section also occurred during 2004, all references to the dates of those events will omit the year designation.

That letter reads in pertinent part (T. Ex. C-1):

> We regret to inform you that we are unable to approve your request for the following reasons:
>
> -- SERIOUSLY DELINQUENT CREDIT OBLIGATIONS (PAID/UNPAID) ON CREDIT BUREAU
> -- DELINQUENT CREDIT OBLIGATIONS (PAID/UNPAID) ON CREDIT BUREAU
>
> Citibank's decision was based in part on information, not necessarily of a derogatory nature, from the consumer reporting agency(s) listed below...: TRANS UNION CORPORATION.

On January 31 Benson ordered and received a copy of his Trans Union credit report, which now showed a delinquent account with CBC in the amount of $2270.60 ("CBC Account") (B. St. ¶9). As reflected in a letter that Benson had received on August 23, 2003, Peoples Gas had then placed the Peoples Account with CBC for collection (B. St. ¶2; B. Ex. A). Benson telephoned Trans Union to dispute his credit report on February 5 (B. St. ¶10).

On February 6 Trans Union began an immediate investigation of Benson's dispute by sending CBC an Automatic Consumer Dispute Verification form ("ACDV")(T. St. ¶48), which referred to Benson's dispute this way (T. Ex. B-6):

> Customer states belongs to another individual with same/similar name. Provide complete ID (incld. SSN, DOB, Generation Code, etc.).

CBC responded on February 19, confirming that the name, social security number and address on the ACDV matched the information it had received from Peoples Gas when the account was placed for collection (T. St. ¶49, 50). On February 25 Trans Union then

4

sent Benson an updated copy of his credit report, which still reflected the CBC Account (T. St. ¶55).

Benson telephoned Trans Union again on March 1 to complain about his credit report (T. St. ¶57). On March 2 Trans Union sent CBC another ACDV (T. St. ¶59), which characterized Benson's dispute in these terms (B. St. ¶16):

> Consumer states inaccurate information. Did not provide specific dispute. Verify complete ID and Acct Information.

Before it received a response from CBC, Trans Union received a letter from Benson that said as to the CBC account (T. Ex. B-10):

> This item is inaccurate, because this account was opened by my father, Nathaniel Benson, Sr., SS#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 (who also sometimes uses the suffix Jr.) who owned the property located at 8329 S. Cottage Grove, Chicago, IL 60619. The debt in question could not belong to me due to the fact that location [sic] that the services were provided for was his place of business; which was formerly known as Nate Grove Meats. There may be some confusion as to whose [sic] this item belongs to since my father and I have the same name and now temporarily use my mailing address.

Benson's letter included copies of (1) his credit report, with the CBC account circled, and (2) a document from the Internal Revenue Service ("IRS") addressed to (T. Ex. B-10):

> Nate Grove Meats
> Nate Benson Sr.
> 8329 S. Cottage Grove
> Chicago, IL 60619-5905298

On March 24 Trans Union responded to Benson with a letter of its own (T. St. ¶67), explaining that it was investigating Benson's dispute and would respond in writing once its

5

investigation was complete (T. Ex. B-12). But even before it sent that letter, on March 20 it had received CBC's response to the ACDV, confirming that Benson's name, address and social security number--not that of his father--were associated with the CBC Account (T. St. ¶69). So on March 29 Trans Union sent Benson an updated copy of his credit report, still reflecting the CBC Account as delinquent (T. St. ¶72).

Before he received that latest credit report Benson had applied for a line of credit for the purchase of a car, this time with Bank of America, N.A. ("Bank of America")(T. St. ¶101). Benson's application, submitted on March 27, was denied by Bank Of America on April 17 in a letter reading (T. St. ¶100; T. Ex. B-17):

> If you would like a statement of specific reasons why your application was denied, please call us or write to us at our number and address below within 60 days of the date of this letter...
>
> Our decision was based in whole or in part on information we obtained from [Trans Union]. The agency...played no part in our decision other than providing us with information about you and are unable to provided specific reasons why we have denied credit to you.

Benson did not communicate further with Bank of America after receiving that letter (T. St. ¶104). Instead he filed suit on June 7. After receiving the Complaint Trans Union sent CBC yet another ACDV about the CBC Account (T. St. ¶76). On June 17 CBC again verified that the CBC Account contained Benson's name, address and social security number (T. St. ¶77). Trans Union

6

then telephoned CBC on June 22 (T. St. ¶78). CBC again verified Benson's identifying information, but it informed Trans Union that the CBC Account had been transferred back to Peoples Gas, the original creditor (T. St. ¶79). On that same day Trans Union deleted the CBC Account from Benson's file.

### Claims Under the Act

It is undisputed that Trans Union is a "consumer reporting agency" within the meaning of Section 1681a(f), that the credit reports at issue are "credit reports" within the meaning of Section 1681a(d) and that Benson is a "consumer" for purposes of Section 1681a(c). Sections 1681n and 1681o respectively provide private rights of action for willful and negligent noncompliance with any duty imposed by the Act and allow recovery for actual damages and attorney's fees and costs, as well as punitive damages for willful noncompliance (see Casella v. Equifax Credit Info. Servs., 56 F.3d 469, 473 (2d Cir. 1995)).

Benson claims Trans Union failed to fulfill its duties under the Act (1) by not following reasonable procedures to assure the accuracy of his credit report as required by Section 1681e(b), (2) by failing to conduct an adequate reinvestigation as required by Section 1681i(a) when he disputed his credit report and (3) by failing to include a statement of dispute on his credit report as required by Section 1681i(c). This opinion addresses those claims in turn.

7

## Reasonable Procedures for Assuring Accuracy

Section 1681e(b) reads:

> Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.

To avoid summary judgment on his claim under that provision, Benson must raise a genuine issue of material fact as to each of four elements: (1) that there was inaccurate information in his consumer credit report, (2) that the inaccuracy was due to Trans Union's failure to follow reasonable procedures to assure maximum possible accuracy, (3) that he suffered actual damages and (4) that those damages were caused by inclusion of the inaccurate entry (Philbin v. Trans Union Corp., 101 F.3d 957, 963 (3d Cir. 1996)).

As to the first element of inaccurate information, Benson "vehemently denies that he opened the [Peoples Account]" and argues that Trans Union "has produced no documentation showing anything to the contrary" (B. Mem. 8). Benson contends that the credit reports attributing that account to him were consequently inaccurate. Trans Union counters that Peoples Gas' records show, and Benson himself admits, that the Peoples Account was opened using his name, social security number and birth date. According to Trans Union, then, its reporting of that account and the related CBC Account was accurate and cannot form a basis for liability under Section 1681e(b).

8

Even though Benson acknowledges that the Peoples Account was opened using his name, address and social security number, he nonetheless claims that the information in his credit report was incorrect because the account "belonged to his father for his place of business" (B. Mem. 8). He also provides an IRS document that he says shows that his father "is the sole owner of the business" at which utility service was provided (P. Mem. 8). But while there is no dispute that Benson's father owned the business at which the utility service was provided, Benson's father testified that his son opened the Peoples Account for that business (T. Ex. G at 6, 15):

> A: At that time he was only about 20, 21 so I was trying to establish his business...So I had him go down to People's [sic] Gas and apply for the gas bill...
>
>           \*          \*          \*
>
> Q: I think then you said that your son -- you asked your son to open the People's [sic] account for the 8329 South Cottage Grove?
> A: Yes, I had.
> Q: Kind of build up the credit and help him come along in business?
> A: Well, you know, he was going to run the location there, so he was establishing the business out there.
> Q: Do you know if he opened any other accounts for that location?
> A: I would think so. I think he opened also [sic] the electrical.

Benson flatly contradicts his father's testimony (T. Ex. C at 83):

> Q: Have you ever had an account with People's [sic] Energy or People's [sic] Gas?
> A: Never.

9

> Q: You never filled out an application for People's [sic] Gas or People's [sic] Energy?
> A: I don't believe, no.
>
> * * *
>
> Q: Do you know how People's [sic] Gas got your Social Security number?
> A: No, I do not.
> Q: Do you know how People's [sic] Gas got your date of birth?
> A: No, I do not.
> Q: Do you know how People's [sic] Gas got your name?
> A: No, I don't. Me and my dad had the same name.
> Q: Do you have a belief as to how People's [sic] Gas got your personal information?
> A: Yes, maybe through my dad. Maybe, I don't know.

In sum, there is no dispute that the Peoples Account was opened using Benson's name, address and social security number. Instead what is controverted is the identity of the person who used Benson's personal information to open it: Benson or his father.

Because the record must be viewed in Benson's favor for purposes of Trans Union's motion, credulity must be suspended by assuming for now that his father opened the account using Benson's personal information. But even in those terms this is not a run-of-the-mill case of identity theft, in which one party "steals" the personal identifying information of another and then "profits by using his victim's personal information to take funds from her bank accounts, take over her very identity, run up vast debts, or commit crimes" (Holly Towle, <u>Identity Theft: Myths, Methods, and New Law</u>, 30 Rutgers Computer & Tech. L.J. 237, 241 (2004))). In such cases the reporting of an account can be

considered "inaccurate" even though the account contains a victim's true personal information because there is no question that it is the thief rather than the victim who is responsible for the account.

Here in contrast the claimed inaccuracy of Trans Union's reporting of the Peoples Account and later the CBC Account is far from clear. Benson stops short of saying his father stole his identity, and indeed there is no question that he was employed by his father's business. Trans Union thus argues strenuously that Benson *is* responsible for the accounts, presenting the earlier-quoted testimony by his father as evidence. But because Benson's own sworn testimony contradicts his father's, that suffices to create a genuine issue of material fact as to whether there was inaccurate information on his consumer credit report.

But Benson still falls at the second Section 1681e(b) hurdle, which requires a showing of a genuine issue of material fact as to whether that inaccuracy was due to Trans Union's failure to follow reasonable procedures to assure accuracy. On that score Benson's claim cannot survive summary judgment, because Trans Union's procedure for assuring accuracy in the credit report at issue here is reasonable as a matter of law.

As a general matter, it is undisputed that Trans Union's normal procedures for processing consumer credit information mirror those recently held reasonable in <u>Sarver v. Experian Info.</u>

Solutions, 390 F.3d 969, 972 (7th Cir. 2004). Those procedures include collecting and storing individuals' names, addresses, social security numbers and birthdates, and then linking that information to individual "trade lines of credit," which are in turn compiled to generate credit reports (T. St. ¶¶83-89). Because of the vast scale on which those procedures are conducted--Trans Union itself gathers information from some 85,000 sources and processes over 22 billion updates to the information it reports each day--Sarver, 390 F.3d at 972 made clear that a credit reporting agency is not liable under Section 1681e(b) for reporting inaccurate information concerning a line of credit where that information is "received from a source that it reasonably believes is reputable...unless the agency receives notice of systemic problems with its procedures."

Benson does not contend that Trans Union received notice of systemic problems with its procedures. Instead he claims that Peoples Gas was not a reputable source of credit information, so that Trans Union unreasonably relied upon it as to both the Peoples Account and the CBC Account. According to Benson, when Peoples Gas failed to respond to Trans Union's verification request in October 2003, Trans Union was put on notice that Peoples Gas was an unreliable source of information. As a result, as he would have it, Trans Union should have doubted the validity of the Peoples Account and later the CBC Account, and it

12

should have undertaken a more extensive investigation before placing those accounts on his credit report. But that argument is unconvincing.

Just to state that proposition--that Trans Union could not reasonably believe Peoples Gas was a reputable source of credit information simply because it failed to respond to one verification request--demonstrates why it is wholly unconvincing. On that premise, whenever a credit furnisher failed to respond to any verification request, all of the information supplied by that credit furnisher would be called into question, and the reporting of any of that information by a credit reporting agency could lead to liability on the agency's part. That would be an absurd reading of Section 1681e(b). Instead, because of the "enormous volume of information" credit agencies such as Trans Union process on a daily basis, deviation from standard procedures is not required "[i]n the absence of notice of prevalent unreliable information from a reporting lender" (Sarver, 390 F.3d at 972). Trans Union received no such notice, and its adherence to the normal procedures it uses to process consumer information was therefore reasonable as a matter of law. Hence Benson's Section 1681e(b) claim fails, and it is unnecessary to discuss the remaining elements of causation and damages set out in Philbin.

### Reinvestigation of Dispute

Section 1681i(a)(1)(A) states:

> If the completeness or accuracy of any item of information
> contained in a consumer's file at a consumer reporting
> agency is disputed by the consumer and the consumer notifies
> the agency directly of such dispute, the agency shall
> reinvestigate free of charge and record the current status
> of the disputed information, or delete the item from the
> file...before the end of the 30-day period beginning on the
> date on which the agency receives the notice of the dispute
> from the consumer.

Again the standard is reasonableness--the agency must "make reasonable efforts to investigate and correct inaccurate or incomplete information brought to its attention by the consumer" (Cahlin v. General Motors Acceptance Corp., 936 F.2d 1151, 1160 (11th Cir. 1991)). So a claim under Section 1681i(a) is thus properly raised (id. (emphasis in original)):

> when a particular credit report contains a *factual*
> deficiency or error that could have been remedied by
> uncovering additional facts that provide a more accurate
> representation about a particular entry.

Benson claims that Trans Union violated its duties under Section 1681i(a) when it continued to report the CBC Account after he notified Trans Union that it was not his.[5] While it must be assumed for purposes of this motion that Trans Union's inclusion of the CBC Account on his credit report was inaccurate, Benson has failed to show that such inaccuracy stemmed from Trans

---

[5] While it is unclear whether Benson also advances a Section 1681i(a) claim as to the Peoples Account, any such claim would unquestionably be meritless. Trans Union inquired of Peoples Gas immediately after receiving Benson's dispute as to the Peoples Account on September 16, 2003. When Trans Union received no response, it deleted the Peoples Account from Benson's file on October 14, 2003, fully complying with its duties under Section 1681i(a).

Union's failure to perform a reasonable reinvestigation of his dispute.

Trans Union's investigations of both of Benson's communications disputing the CBC account--his February 5 and March 1 telephone calls--involved its transmission of ACDV forms containing Benson's name, address and social security number to CBC. In each instance CBC responded to the ACDV by verifying that Benson was responsible for the CBC Account. Benson claims that the ACDV was insufficient under Section 1681i(a) because the information he provided in connection with his dispute put Trans Union on notice that the sources of information concerning the CBC Account (CBC and Peoples Gas) were unreliable. So, he says, Trans Union had an obligation to conduct a more extensive investigation.[6] But even if that argument were to be accepted at face value, Benson has not explained what other investigatory measures Trans Union should reasonably have undertaken and, more importantly, what information a more extensive investigation would have revealed.

---

[6] Benson also contends that Trans Union failed to "review and consider all relevant information" regarding his disputes, as required by Section 1681i(a)(4) because it "failed to convey all relevant information received" from Benson in the ACDVs it sent to CBC (B. Mem. 15). Not so--the statute does not require a credit reporting agency to pass along all information received from a consumer. Section 1681i(a)(4) requires only that the agency "review and consider" that information. Trans Union's investigation of Benson's disputes of itself demonstrates that it did so.

15

It is true that to comply with Section 1681i(a) a credit reporting agency's investigation "must consist of something more than merely parroting information received from other sources" (Cushman v. Trans Union Corp., 115 F.3d 220, 225 (3d Cir. 1997)). Indeed, "a credit reporting agency may be required, in certain circumstances, to verify the accuracy of its initial source of information" (Henson v. CSC Credit Servs., 29 F.3d 280, 287 (7th Cir. 1994)).

But Benson can draw no comfort from those principles. Here Trans Union had no reason to doubt the reliability of either Peoples Gas or CBC as sources of information, and the discovery in this litigation has only confirmed that such is the case. It must be remembered that the only support for the arguendo assumption that Benson is not responsible for the Peoples Account (or by extension the CBC account) is Benson's own deposition testimony. But on the other side of the coin, the records of Peoples Gas and CBC clearly indicate, and Benson's father's testimony expressly states, that Benson was responsible for those accounts.

Section 1681i(a)'s requirement of a reasonable reinvestigation cannot be read to demand a more extensive investigation than has been undertaken in connection with this lawsuit. And because the extensive investigation undertaken for purposes of this lawsuit has failed to "uncover[ ] additional

16

facts that provide a more accurate representation" (Cahlin, 936 F.2d at 1160) of the Peoples Account or the CBC Account, it follows that any reasonable reinvestigation required by Section 1681i(a) would have had a similar result. Benson's Section 1681i(a) claim also fails as a matter of law.

### Inclusion of Statement of Dispute

Finally, Section 1681i(c) reads:

> Whenever a statement of a dispute is filed, unless there is reasonable grounds to believe that it is frivolous or irrelevant, the consumer reporting agency shall, in any subsequent consumer reporting containing the information in question, clearly note that it is disputed by the consumer and provide either the customer's statement or a clear and accurate codification or summary thereof.

While Benson's Amended Complaint alleges that Trans Union violated the duties imposed by that section, Trans Union's initial brief in support of its motion points out that Benson never submitted a statement of dispute, so that his claim that Trans Union failed to include such a statement in his credit report must fail as a matter of law. Sure enough, Benson admits that he never sent Trans Union a statement of dispute as defined by Section 1681i(b)(B. Resp. ¶¶73-75). In short, Trans Union is also entitled to summary judgment as to Benson's Section 1681i(c) claim.

### Defamation

Section 1681h makes consumer reporting agencies qualifiedly immune from state law defamation claims unless a plaintiff can

show that the credit reporting agency acted with malice or willful intent to injure. Though Benson admits he has no evidence of any intent to injure him on Trans Union's part (B. Resp. ¶¶32-33), he nonetheless claims that Trans Union's failure "to deal with a straight forward detailed dispute which included supporting documentation" shows malice because it "demonstrates at the very least a reckless disregard for the truth and a willful intent to injure" (B. Mem. 17).

It is an understatement to say that the record is completely devoid of evidence that any claimed error in Trans Union's credit report resulted from malice on Trans Union's part. Far from it: On the uncontroverted evidence, both the procedures Trans Union employs as a general matter and the actions it took as to Benson's particular dispute were calculated to assure accuracy in the credit reports it produced. Like his other claims, Benson's common law defamation claim fails as a matter of law.

## Conclusion

Up to now this opinion has been careful to avoid the obvious fact that the discussion here has given Benson and his counsel more than their due. While Benson's self-serving deposition testimony has been considered for analytical purposes as creating a genuine issue of material fact as to whether he or his father opened the account in question, that matter can be and should have been handled between the two of them. For Benson to have

18

dragged Trans Union into that dispute in an attempt to dip into its deep pocket was at best ill-conceived, for nothing he has produced in opposition to Trans Union's motion has called into question its fulfillment of the duties imposed on it by the Act. Trans Union's Rule 56 motion is granted in full, and this action is dismissed with prejudice.

                                                        /s/ Milton I. Shadur
                                                        Milton I. Shadur
                                                        Senior United States District Judge

Date:   August 25, 2005